a legend Okay, Mister East Thank you your honors and may it please the court. My name is Ken East and I represent Fort Worth police officer Richard Heppner With the court's indulgence I will speak to the issues of excessive force and answer questions there may be about jurisdiction Counsel for the other officers will address the remaining issues This is obviously a tragic case But when Jerry Waller lunged for and rearmed himself with his handgun and spun toward officer Heppner officer Heppner was justified in shooting in self-defense even the district court. So but there's a fact We're here on a pleadings challenge your honor and the standard is whether or not these plaintiffs have managed to nudge Their claims across that line from possible to plausible and I submit that they have not our pleading standards are not Based on quantity but quality and I submit that the 650 pages that these pleadings consist of Speak to the lack of quality in these pleadings and as an example the plaintiffs in this case have relied Throughout this litigation on the fact that this gun had no blood on it They've invented a cover-up theory where they say that the officers moved the gun away from the body after mr Waller was shot not that they placed the gun in his hand that they moved it away from his body They have invented a theory of the case for which they have no direct evidence And they are attempting to make the circumstantial evidence fit their theory. Not the other way around They say the gun has no blood on it. Therefore. He could not have been shot while he was holding the gun He could not have fallen on the gun because it would have blood all over it So the defendants file motions for summary judgment and for motions for judgment on the pleadings that we're here about today In their rule 7a reply they attach hundreds of pages of documents including many photographs of this gun The district court said the gun has blood all over it You can see it in the photographs and we were handed when we got here this morning a package of photographs that these plaintiffs are going to show the court, but sequentially significantly, they're missing the best photograph of the gun that we have in the record and They do that. Obviously, they don't want the court to see it. But if you look at the record adversarial system mystery, of course but Look at the record page 3014 they show you pages 30 13 and 30 15. They don't show you 30 14 pages 31 53 through 31 60 or more photographs of this gun that show blood on the cartridges within the gun itself So now on appeal they've changed their position to well There was blood on the gun, but there wasn't a pool of blood if the gun had been under him There would be a pool of blood but they moved the gun away from the body when they checked his vitals So they didn't transfer a pool of blood along with the gun in Determining this all sounds like a jury argument to me in determining why we have juries Rather than judges deciding facts, right? But in the man is case on the veros case Thompson Out the city of Alexandria case that I've cited in my brief in those cases There are all types of alleged fact issues where the gun was where the boot was what happened these facts don't change Whether or not the officer was justified in shooting at the moment He shot and on the pleadings standard this court takes into account. It's common sense after reviewing the facts but with a pleading simply do not permit the court to infer more than the mere possibility of misconduct, it's not enough and Allegations that are merely consistent with wrongdoing are not enough. That's all we have in this case in Another example and not to mention the sufficient precision and factual specificity Shaltea requires to overcome qualified immunity that's completely absent in this case This court has repeatedly said where one officer is the only account you have that doesn't discount his Testimony or his allegations in this case. They've put it all into their pleadings. So it's a challenge to the pleadings They chose to put in all this evidence in their pleadings, that's why it's not a summary judgment in their current briefing your honor, they speak to Something that they want the court to believe is a very important allegation that at the time Officer Hefner was yelling at mr. Waller to drop the gun drop the gun drop the gun They the plaintiffs say three different places in their brief that well officer Hanlon said he couldn't understand what officer Hefner was saying as If that would matter if even if it were true But look at the site references and please look at the site references for all of their allegations your honor I think they're fantastic lawyers and they're doing their client the best service they can but they have a case where it was a justified Shooting and they can't overcome that they cite pages 30 72 and 30 73 out of the record on those pages Officer Hanlon is saying I was at the front of the house. I hear screaming from the back of the house I don't know what's going on at that moment But I run around to the back of the house and then I heard and then I saw officer Hefner had a subject at gunpoint He was yelling put the gun down put the gun down and the subject wasn't complying I said Fort Worth police put the gun down and and then I put my gun on him the subject waited a second then put His gun on the vehicle that was inside the garage But I don't know what happened when what went through his mind But when he went towards the gun again grabbed the gun off the top of the car grabbing it Officer Hefner went toward the gun and attempt to I guess stop him from grabbing the gun And when the Hefner stepped back the subject raised the gun and pointed at officer Hefner Yet this is the testimony that plaintiffs cite three times and they're brief as somehow being supportive of their theory your honor all they have done is Try to raise immaterial factual disputes and take what this court has said to be undisputed facts and put a spin on them that Amounts to nothing more than speculation Attempting to use undisputed facts to imply a speculative scenario scenario is not sufficient to overcome officers qualified immunity And that comes from the man is on to various cases The autopsy report They say in their pleadings the autopsy shows Mr. Waller couldn't have been holding a gun the district court says well the plaintiffs say the autopsy report says that mr Waller couldn't been holding a gun the autopsy report says nothing of the kind the autopsy report is a set of data that shows gunshot wounds entry points exit points and cause of death and the autopsy shows that he was shot at various angles on his arm indicating that he was shot and he was Probably falling as he was being shot because officer Hefner sees somebody pointing a gun at him he fires in self-defense out of fear for his own life and this court has said that We're not going to use that type of inconclusive evidence to overcome qualified immunity anything could have happened in those moments that that shooting took place and plaintiffs attempt to Overwhelm the court with 600 pages of evidence that most of it is is irrelevant and doesn't speak to The issue should not allow them to Defeat my clients qualified immunity. All right Rebuttal mr. Maxwell I Represent officer BS Harden in this matter Officer Harden along with his partner officer Chambers appeared at the scene of this tragedy six to ten minutes after the shooting occurred All of the causes of action that were pled against officer Harden have been dismissed by the district court with the exception That officer Harden's actions were a part of a conspiracy to deny the plaintiffs Access to the courts. So this necessarily means that I'm going to focus on those three elements for the purpose of this appeal The first is Officer Harden's actions and mr. East talked a lot about that. But let me just emphasize a couple of things Officer Harden has noted that what he did because he had EMS training when he appeared at the scene is he went over he Removed the gun from underneath. Mr. Waller's body and placed it a good distance away and that he checked. Mr Waller for his pulse The plaintiffs on the other hand have said no he couldn't have done that. He couldn't have removed the gun from underneath. Mr Because there was no blood on the gun, but as part and parcel of the plaintiff's own pleadings They then say there was blood on the gun And so they completely contradict themselves and that's borne out by the photographs that were attached To the 7a reply and also borne out by officer Greene's affidavit there is a contradiction of the plaintiff's pleadings and That should mean that there is no clear pleading as required as to what the actions of officer Harden were And therefore they cannot show in these pleadings that there has been any kind of violation of clearly established law Now part two of this goes to the conspiracy that they claim the actions of these officers did I think it's really important to note that as far as a Who is Conducting the conspiracy what the actions were the various officers that would That would comprise the conspiracy the requirement for proof of conspiracy Obviously is agreement But there is absolutely nothing in the plaintiff's pleadings that goes to any kind of agreement Between the various officers that were there whether it be officer Heppner officer Hanlon My officer officer Harden officers who appeared later at the scene officers who were there at the scene after the shooting occurred There is nothing Regarding the agreement between the parties And then there's the final element of this and I frankly think it's the most important element To focus on for the purpose of this appeal and that is denial of access to the courts The case law that I've cited in the brief is pretty clear There to be a denial of access to the courts there must be proof of an actual Deprivation and I think it's the Foster versus City of Lake Jackson case It says a conspiracy to deprive even if that conspiracy is true, which of course I vehemently deny But even if that conspiracy was true That's not sufficient to prove denial of access to the court because after all in this case there has been no denial of access to the court because a lawsuit was filed and Whether you analyze this from our forward-looking perspective or a backwards-looking perspective The plaintiffs had not been denied of any rights they had to pursue this cause of action and therefore the pleadings do not support Denial of access to the court. Let me ask a question Is the denial of access to the courts claim does that involve? somehow Fooling with the evidence in a way that it shouldn't have been done. Is that that claim encompassed in that? I Think that the argument there is that if the facts If the facts are as alleged if those facts somehow Interfere with the right of the plaintiffs to file their cause of action. Then. Yes, the facts become a Case the plaintiffs themselves have not said that that fact the plaintiffs have said and I wrote it down here There is a potential because of what they claim was a wrongful act by these officers. There is a potential For them to have difficulty in bringing their suit and your honor. That's not enough It's not enough for there's just to be a potential problem There must be some kind of denial of a constitutional right to proceed with your lawsuit into court And they have not shown that in their pleadings Thank You, mr. Maxwell, mr. Jeffrey Good morning, I'm Jim Jeffrey. I have the honor of representing officer Benjamin Hanlon And I'm going to focus on the denial of access to the courts claim Because if that claim fails then the other claims against my officer fail as well And that's the claim for conspiracy and declaratory judgment claim Which is although brought under Texas law It's based on the same provisions or parallel provisions of the Texas Constitution And if that claim fails then that declaratory judgments action would fail as well The the thing to look at are the elements of this backward looking Denial of access to the courts has to be a showing an underlying cause of action official actions that Frustrate litigation on that cause of action and then the critical one is there must be a showing of a remedy that might be awarded as reckons recompense for The actions but it's not otherwise Available and so the focus here is what remedy was there and how was it interfered with or denied? And in the Christopher V Harbury case the parties have briefed and referred to it usually as Harbury So that's what I'll do for simplicity The Supreme Court said at page 416 of the case It's pointless to go through the litigation to seek only the same remedy as would have been sought on an existing claim So there needs to be a showing by the plaintiffs that there's some other remedy That was interfered with by this alleged official action And the plaintiffs have at most said that and I'm quoting The actions made it more difficult for the plaintiffs to prove their case and that's it the record on appeal at page 474 and in the district courts order at record on appeal 4351 the district court points out that that's what the plaintiffs are complaining of and the plaintiffs focus on two cases from this court Ryland the Shapiro and Foster versus Lake Jackson and the plaintiffs assert that both of those cases support their claim that because Their lawsuit is more difficult as a result of the various actions of the officers involved in this so-called denial of access to the courts the moving of the evidence for some The alleged false reports by others, but they say that their case is made more difficult but Ryland and the Foster v. Lake Jackson cases Don't say that that's enough to give them this denial of access to the courts under a backward-looking theory Which is all that's left because judge means did dismiss The forward-looking denial of access to the courts as to all the defendants that are here on dismissal motions The other defendants that I had represented previously were dismissed out as well on a summary judgment proceeding but this court's Foster case Has an important footnote footnote 7 page 430 and it and this court Specifically questioned the Seventh Circuit citing Ryland for the proposition that the government cover-up of evidence violates a right of access to the courts even if The parties were able to successfully file suit Well the plaintiffs there's no doubt they filed suit They've got a pleading and a rule 7 reply that's 700 or 600 and some odd pages so they certainly were able to file suit and pursue their remedy and There's two cases by this court that no other none of the parties cited in their briefing Unfortunately, I wish I had been able to be involved in the briefing I wasn't but the two cases one was written by Judge Smith in 1989 It's Crowder vs. Synyrd 884 F 2nd 804 and at page 812 to 814 The court recognized that Ryland requires prejudice not mere inconvenience in pursuing a claim and Another more recent case it was a criminal case McRae vs. McCabe 702 F 3rd 806 and the key parts are at 830 to 831. It's a 2012 case The court was dealing with a criminal case Where there was a prosecution attempted for a failure or denial of access to the courts and this court? cited the three elements from Harbury and basically said that the plaintiffs had not proved or the government had not proven that There was a cause of action that was denied or lost because of the alleged misconduct and that's what we have here the plaintiffs have not shown a Deprivation of an access to courts because they didn't lose the right to sue They have in fact, thank you. Thank You. Mr. Jeffrey. Thank you Mr. Render Please the court. I'm Art Brinder. I'm representing the Waller family Kathy Waller initially brought this suit along with others and she passed away So this is the children of Jerry Waller the deceased in this case, and I'd like to first of all it's our position that the judge means just Terry means opinion should be upheld and that the denial of Qualified immunity was proper. And what I'm going to do is because it's that's such a factual analysis Procedurally need to understand that I've got I've had no discovery whatsoever Even when the Chatea motion that the judge means Issued it prohibited us from doing any discovery. So the evidence that we have is Basically from open records requests, you don't get everything in an open records request, but that's basically what we did if we were to Affirm judge means order in this appeal that would not preclude would it any of the officers ability to assert a qualified immunity defense Later in the proceeding. That's correct. That's correct And and of course as the court knows the this is a these both of all three of these appellants filed Rule 12 C motion. So the standard is that the facts as pled by the well-pled facts by the plaintiff Are to be taken as true For purposes of the analysis and so and I think what what this court said Gonzalez versus Dallas County that the public official has to be content with With dealing with the best Evidence that is of the plaintiff bless pleading of the plaintiff Let me let me give you a little overview and I've got some exhibits I'd like to think might go a little quicker. We could go through the evidence, but basically Jerry Waller was a Fort Worth businessman never had any Trouble whatsoever. No, no problem with the law. He and his wife had a residence at 404 Havenwood Lane North in East Fort Worth on the bordered on or the back of the residence was on a golf course and Across the street was a neighbor who lived at 409 that neighbor Had alarm went off on May 13th of May 26 28th of 2013 and The she'd had surgery and so the the ADT operator called police said we had this alarm It's an audible alarm, but the we talked checked with the neighbor and she's had surgery would somebody check on her? So it wasn't this was this these officers were not directed to a burglary in progress But to a welfare call lower priority When they went out there and I'm going to now Start going through these exhibits. First of all, the exhibit one these all of course are in the record exhibit one shows the markings on their curb of their home for for and Three places on both sides of the curve the driveway front right in front of the house on the sidewalk that goes out the mailbox mailbox even has that on there and then the second exhibit to has a view from The view out from their driveway and you can see that's the house across the street is the one at 409 where the officers were Supposed to go and it too has a marking 409 on the curb It's also it's a little harder to see but there are also numbers on the side of the mailbox Where the officers went they they ignored their their GPS that would have shown them the exact Outline of the house with an eye with a number on it. They say they didn't use that they went instead I don't understand the relevance of all that. Let's assume all that is true What does that really have to do with what happened at the scene of the shooting? That's a good point, but what I'm what I'm what I think it has to do with it is that that How the how the rest of this develops and let me make I'll just go through it really quickly because what happens is 15 minutes after the after mr. Waller shot dead in his own garage The union the the lawyer for the police union has been summoned and talks to both of these people He's the one that told him that they were at the wrong house and I think that colors what they then say and what they claim from then on as Part of the cover-up and the conspiracy to cover it up. That's where I think it goes into play They're at the wrong house These people this isn't like a lot of these cases where somebody's involved in some sort of criminal activity and there's just that whatever These people are asleep in their home at one o'clock in the morning and the officers didn't follow their procedure instead of they walked Well exhibit exhibit 3 you see they they stopped at this post office mailbox right down here and they knew They were on the wrong side of the street 412 They were looking for 409 But they didn't know that there were odd numbers on one side of the street even numbers on the other standard situation for they said they didn't know that and and they Apparently didn't they went instead of going to the front door and knocking on the door for the welfare Check they went to the back and they shown their lights around in the back and all over that And and all this sort of thing woke up the the the Waller's dog the dog Barking he went to check because he thought his car which was parked in this driveway that you can see there Had had sometimes something would hit it and the alarm would go off It didn't have an audible alarm, but the lights would start blinking and he thought that's what's happening He goes to shut off that and apparently realizes that There's more to it than that because what happens according to what they did they then walked around the front I mean, they spent five minutes doing this then they walk around the front and when they do The He then apparently decides he's going to go out the back. Meanwhile Hopner. I'm pronounced at Hopner They were crossed a little bit different. He goes around the back again, okay Handling is at the front door knocking on the door And he's actually shining his light flashlight on himself to show the people that it's a police officer there Well, mr. Waller has gone out the back whether he had a gun in his hand or not is up in the air but I'm gonna assume for right now that he did because they claimed that he did and And and 40 seconds later he's dead in his garage 40 seconds later Mrs. Waller says that she when he he was gone for longer than she thought and suddenly she hears some yelling she can't understand what's being said and But she immediately thereafter she hears bam. Bam. Bam. Bam. Bam, which she later finds out are gunshots. All right now Officer Hopner In his statement agrees. He never identified himself as a police officer never identified himself as a police officer I'm going to skip to so we can Move along a little bit, but if you look at exhibit 11 you'll see that the car the those Cones represent Kasich's from the gun from the block 22 pistol that he had or sorry block 38 pistol that he had But the line back there at the back, it's just an all-in-the-record where the Between the end of the concrete is 54 feet from where the garage is Okay, 54 feet from a line extended in the garage If you look at the one right before that number Number right after that number of 12 was taken sometime that night, but these are all crime scene photos And you can see that there's it's very difficult to even see anything out there. It's dark and He doesn't identify himself as a police officer, all right the He he claims that that mr. Waller then The only conversation takes place is that he said mr. Waller says get that light out of my eyes and But that's the only thing that said that he was he recounts and But this is where this is what judge means discovered you see first of all We'll talk about the gun in a minute, but I'm going to skip to number six. It shows a wound through the left thumb Okay according to According to officer Hopner. Mr. Waller had this small gun in both hands According to officer Hammond he had it in one hand Okay. Now the the bullet wound goes through the thumb and then if you look at the next one, which is exhibit Appellees exhibit seven it goes through the the index finger and part of the second finger all right, and The other thing is he they claim he had both hands on the gun If you look at exhibit nine See that there's no the only blood on exhibit nine is blood spatter see the little dots that are on the fingers right there that comes from Mr. Waller Having his hands in front of his over his eyes like this For the other right hand behind it trying to see who was out there Some 30 he says 20 he says seven yards 21 feet But it was more like 40 feet where he was according to where the shell casings land end up and And he could not have a gun in his hand pointing at the officer at that point We don't think he had it at any point the gun was either thrown down because he couldn't tell who was out there and he Obeyed the command even though he didn't identify himself or that's not his gun But in any event if this and and the gun has been we demanded that gun immediately on the 14th of June along with these other incidents We didn't get any of it. And we the reason we didn't get any of it was they claimed it was part of their Investigation and if you look at the last exhibit that I have This is exhibit number 15 This is an affidavit from the investigating detective Merle green And what Merle green says is and set part in paragraph two Part of the records that will be presented the Tarrant County grand jury include the autopsy records of Jerry Waller These records are important since the statements of the shooter and are any witnesses Involved may conflict with the autopsy findings That's exactly what we say and what we and what in what James judge means felt was a plausible pleading And As I understand it, there's nothing in your allegation. That is the case that you're presenting at this point That suggests that it was mr. Waller's Gun and that he brought it Onto this onto the scene himself. Is that right? I'm sorry You're you're you're you're not acknowledging that it was mr. Waller's gun. Is that right? That's right in part, I mean you you plead what you believe to be true in good faith under the under the under the federal rules and and and you're You're sorry. You are you alleging that it was a throwdown gun? I don't I just want to know what what the case is That you're alleging We don't know what we know. What we know is this Mrs. Waller was this is someone no, mrs. Waller walks out to find this scene sort of situation okay, and And when she does her husband is laying like this with his arms prone over the side like this not in the position that you See it in these other diagrams we have here She is eventually after she stays and it kept in a police car for about an hour taken to the emergency room Her blood pressure was high. She has blood sugar problems, etc And she's interviewed by a plainclothes police officer Officer Baggett and officer Baggett Surreptitiously tapes this conversation and this is an old roundabout way of answering the question But oh, this is this is the best answer I can give you During that conversation is when she basically says well I just got through telling you that all of a sudden bam bam bam these She heard the yelling the same yelling that officer Hanlon heard on the other side of the house He couldn't understand what was being said. She couldn't either but it was a yelling and she says it's followed immediately by these gunshots Okay, she also says in that thing because they're asking that Mr. Waller has a revolver. Okay, she described it as a single shot revolver She's apparently saying this couldn't have been his gun, but he so he had he owned a gun. Okay Whether it's this gun or not, they wiped it's quite completely clean of blood. They did no blood testing They did no Fingerprint testing they did no DNA testing. They took DNA from the medical examiner's office. Okay to have it Examined and either they and realize I'm dealing with I don't have discovery I haven't got anybody under oath or anything But but they have not provided me a copy of any analysis of that gun except They did it's about the time. I was requesting it or shortly thereafter I requested the 14th of June the 28th of June. They do ballistic testing There was no need to do ballistic testing on that gun because it hadn't been shot. There were five. It's a five shot revolver There were five rounds in it when mrs. Waller describes the gun She says it's a single shot gun Which which I believe means a the old style Western single-action gun where you have to cock it each time before you shoot it She said it's a single shot revolver. That's what I think she's describing. This is not a single shot revolver and There's some other evidence that I've since discovered but I it's not the record I won't describe it but but I'm just saying it could be his we have gone on the assumption It was his gun that he had a gun in his hand He dropped it and it what couldn't happen is their story about all this running around and all that sort of thing And the reason for that is first of all pop Hopner Once again never gets closer than 40 feet by his own admission. Okay till after he shoots the man and They're trying to say well this shot that we're saying could this this angle so forth can't happen very There's only a couple ways it can happen you'd have to in this position or you could be possibly in a position like this either Way, you're not pointing a gun at somebody but here's but I think Hopner's discussion of it is This is because they're arguing contrary to what their own Client says and what he says is I punched out and they don't even know green ass. What does that mean? Nobody knows what that means. I shoot and then like I put rounds on him He starts falling and kind of like it wasn't falling like it wasn't a free fall he kind of bent over a lot of times in the Academy we see play video of people getting hit and Then bending over and all of a sudden they're reengaging, you know, we have to stop all the threat He was still a threat with a gun in his hand So then so like I shoot him. I know there was one delayed shot. I put rounds on him at first I kind of noticed that he kind of he kind of like he was taking them like that and then he kind of hunched over I'm not sure falling over. He's bending over because it hurts so much I saw that he still had the gun in his hand And so I put the another round on him and that's when he fell forward and the other thing that this man says by the way is Okay, this whole thing happens. The reason I say it's 40 seconds is because It's six minutes they were they arrived it a little before one o'clock It's six minutes after one o'clock six minutes and six seconds is when Hanlon radios to Hopner When he see he's at the front door. He says he's knocking He sees a light come on which is probably in the you could see it from the side lights You could see back to the den where mr. Waller was and so he he radios to Hopner come around the front First of all, he looks and realized Hopner's not behind him like he should have been so he said radios for him to come around the front Hopner never replies after which he hears Hopner yell Okay, and that's what he doesn't understand and then he runs around the back would take him a Good 10 seconds 15 seconds. It's a long house to run around the back But she says she hears those sounds immediately after that same yelling Okay, he runs around the back and he claims that this that there's this back-and-forth that mr Waller puts the gun on the back of the trunk of the car. He then starts to go in the house He then comes back and grabs the gun and picks it up and and he says that he picks it up and that he is Shot by mr. Hopner at one at one to two feet away Okay, once again, it's in conflict with the autopsy. There's no gunpowder residue on the body There would have to be at that distance up to four or five feet. There would have to be there. There's there's none okay, so The other thing is all this this running around They're saying that this is he says in this thing. He's a bad guy. He looks like a bad guy This man is dressed. He has no top on he has jeans He's obviously elderly and he has socks on walking in his own garage He never gets out of his own garage. And in fact, according to mrs. Waller the the like I said, he was laying face down which would also support the way the way he was shot And how he was shot he he he's he's accurate in defending because these shots all go are all headed down The first ones like this then he gets hit out here on the on the on the on the wrist And then he starts to go down He gets hit in the order gets hit that and and the thing about the gun being under him is that's what they claim okay, they claim he fell on the gun now detective green told the the Investigator for the eye, by the way, they don't call the they don't call the the medical examiner for five and a half hours Okay, the law requires a medical examiner be notified immediately He also the law says you do not move the body while the while the medical examiner Till the medical examiner says it's okay They did they violated all those rules and and and the reason that they did was when they got back there They saw what had happened. They the mrs. Waller comes out of the house. She sees him laying there They get her out of the way and then Hanlon goes in along with two others and searches the house They don't have a warrant or anything like that. They then search it again later on with their lawyers Okay, and All this is happening before they then give these statements, which we are now saying this is the public record That's what we're taking. That's what that's what we're critical. Okay, but the Oh, I'm sorry Thank you So What's the situation with the gun being wiped clean if that is so and if it's not so tell us it's not The gun was wiped clean months After the grand jury investigation was concluded and the evidence department that has nothing to do with officer Heppner Returned it to the suspect for apparently Fort Worth policy. We have suspect meaning I'm not sure if I was that suspect about but if the gun was wiped clean It was done had nothing to do with my client wiping the gun clean It was done months after the investigation was complete. The grand jury came back and no bill the officers It was returned to the family and I guess PD policy is you don't return contaminated materials I don't know but there are numerous photographs of this gun and all sorts of stages on the scene and in the crime lab That has nothing to do with allegations against my client with all due respect and and the district court characterized these pleadings as a stream of consciousness hyperbolic complaint and The Supreme Court has told us that in analyzing complaints we can draw on our the courts are to draw on common sense There's nothing In this mountain of documents that makes sense that officer Heppner Got mr Waller to drop his gun and then shot him in cold blood for no reason and now the plaintiff for the first time is saying Well, maybe he didn't even have a gun. That's not alleged in the complaint. He talks about that's the first time that's been brought up It wasn't a welfare call it was an active alarm call the record supports that Officer Heppner didn't identify himself as a police officer He was continually yelling drop the gun when officer Hanlon came around as I just read a while ago and said Fort Worth Police After that, mr. Waller set the gun down and only after that did he lunge for it and turn toward officer Heppner Mr. Brinder talks about the first shot hitting. Where does this come from? There's nothing in the autopsy report that says which shot was first it chronicles it Documents the shots, but it doesn't come up with an idea about which order the shots were were fired in it's it's just a mountain of allegations in an attempt to spin Undisputed facts to support their speculative theory the exact words This court has repeatedly said is not sufficient to overcome qualified immunity On the access to the courts Claim which I think is an easy claim for this court to reverse on mr. Jeffrey didn't get to the point of saying that Even if the law is something other than once you file your case, you don't have a backward-looking access claim It's certainly not clearly established that There's some other way to view that And in my reply brief, I cite district court opinions across the circuit where they have applied it the way we're arguing that Once you file your claim, you don't have an access to the All right. Thank you. Your honors. Thank you Case in all of today's cases are under submission and the court